**IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA**

**FILED**

**March 25, 2024**

C. CASEY FORBES, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**CNX GAS COMPANY, LLC,**
**Petitioner Below, Petitioner**

**v.) No. 23-ICA-36**   (West Virginia Office of Tax Appeals Docket Nos.
20-205, 21-187, and 22-136 consolidated)

**MATTHEW IRBY, STATE TAX**
**COMMISSIONER OF WEST VIRGINIA,**
**Respondent Below, Respondent**

**MEMORANDUM DECISION**

Petitioner CNX Gas Company, LLC ("CNX") appeals the January 5, 2023, final decision of the West Virginia Office of Tax Appeals ("OTA") affirming the West Virginia State Tax Commissioner's denial of CNX's requests for refund of overpaid severance taxes for tax years 2015 through 2018. Respondent Matthew Irby, as West Virginia State Tax Commissioner, timely filed a response in support of the OTA's decision.[1] CNX filed a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022).[2] After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the lower tribunal's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

---

[1] Petitioner is represented by Craig A. Griffith, Esq., and Alex J. Zurbuch, Esq. Respondent is represented by Sean M. Whelan, Esq., Kevin C. Kidd, Esq., and Cassandra L. Means-Moore, Esq.

[2] The Legislature amended W. Va. Code § 11-10A-19 (2023) to clarify, among other things, that appeals from final decisions of OTA lie with this Court. Although not raised by the parties, this Court recognizes that there is a discrepancy in the date this Court gained jurisdiction over administrative appeals generally (July 1, 2022) and the effective date of the 2023 amendments to West Virginia Code § 11-10A-19. Relevant to the timing of the appeals in this case, we find that the amendments to West Virginia § 11-10A-19 clarify the general jurisdictional provisions in West Virginia Code § 51-11-4(b)(4) and § 29A-5-4 (2021) and that we properly have jurisdiction over these appeals.

CNX is a natural gas[3] producer operating in various states, including West Virginia. This appeal involves the calculation of West Virginia severance tax imposed upon CNX for producing natural gas liquids ("NGLs")[4] at West Virginia wells for the four tax years in dispute.

This matter generally involves CNX's horizontal drilling and fracking into the Marcellus and Utica Shale regions of West Virginia. Fracking is a process that involves the high-pressure injection of water, chemicals, and sand into a horizontal well to break apart the shale. This process causes a variety of substances to be released from the shale, including oil, condensate (an oil-like substance that is lighter than oil), methane (also known as "dry gas,") and NGLs. Some of the water, chemicals, and sand used in fracking also come back up through the drilled well.

At each wellhead, the oil, condensate, water, chemicals, and sand are separated from the methane and NGLs. The oil and condensate are typically sold at the wellhead by the barrel. The removed NGLs are then transported to a processing facility through a series of pipelines. Along the way, various types of equipment, such as compressors, separators, and "drifts" help move the material and continue to separate out impurities. At the processing facility, any remaining impurities are removed. CNX's NGLs are primarily processed at the MarkWest Majorsville facility in Marshall County or the MarkWest Mobley facility in Wetzel County, both of which use a cryogenic expansion process to separate out the methane. Then the NGLs are transported to another plant for fractionation, a process that further separates the mixture into three distinct products: propane, ethane, and butane.

CNX generally sells these products after processing and fractionation. However, on occasion, it sells the unprocessed mixture at the wellhead, and the buyer or another party performs the processing and fractionation. When CNX sells the mixture at the wellhead, the sale price is a flat rate times how many MMBTUs[5] are produced. Usually when the mixture is sold at the wellhead, the producer receives a lower price from the sale than it would have if it had transported, stored, processed, and marketed the methane and processed NGLs, with the price reflecting its assumption of such costs and the product's increased value.

---

[3] Natural gas is a mixture of hydrocarbon compounds, the primary one being methane.

[4] NGLs are a group of hydrocarbons including butane, propane, and ethane, and are also called "wet gas."

[5] Metric Million British Thermal Units

West Virginia imposes an annual severance tax on producers engaged "in the business of severing" natural resources "for sale, profit or commercial use." W. Va. Code § 11-13A-3a(a) (2006) (related to oil and gas); § 11-13A-3c(a) (1993) (related to other natural resources). Producers must "file an annual return" pursuant to West Virginia Code § 11-13A-8 that shows "the gross proceeds derived from [their] sale[s]" of natural resources. W. Va. Code § 11-13A-3a(b). From these gross proceeds, the producers can subtract certain costs as deductions under West Virginia Code of State Rules § 110-13A-4 (1992) to arrive at the value of the severed natural resource. *See also* W. Va. Code § 11-13A-2(c)(6) (2004). Then, the producers are taxed at "five percent of the gross value." W. Va. Code § 11-13A-3a(b).

CNX filed its West Virginia severance tax returns timely for tax years 2015, 2016, and 2017. In each, it included the value of NGLs that it severed in its reporting regardless of whether it sold them at the wellhead or after processing and fractionation. Later, CNX filed amended tax returns for tax years 2015 and 2016 with the West Virginia Tax Department requesting a refund for what it claimed were overpaid severance taxes. On December 11, 2020, the Tax Commissioner issued two refund decrease letters, one for tax year 2015, decreasing the refund of severance taxes by $1,737,300.79, and one for tax year 2016, decreasing the refund by $2,335,979.78. CNX appealed these refund decreases.

On September 29, 2021, the Tax Commissioner issued another refund decrease letter for tax year 2017, decreasing that severance tax refund by $1,698,593.85. On November 18, 2021, CNX appealed that refund decrease, and it was consolidated with the first appeal. An evidentiary hearing was held on March 9, 2022, after which the parties filed legal briefs. On August 10, 2022, after the conclusion of the briefing schedule, CNX filed a third appeal. This appeal, unlike the previous two, concerned an outright refund denial issued on August 3, 2022, for tax year 2018, denying CNX's requested refund of severance taxes in the amount of $1,547,710.01. CNX agreed to consolidate this appeal with the others.

CNX's amended returns included amended transportation expenses for natural gas and coalbed methane to claim actual transportation expenses instead of basing transportation expenses on a deduction for fifteen percent of gross proceeds. The returns were also amended to remove any gross proceeds resulting from the sale of processed NGLs because CNX submits that, under West Virginia severance tax law, "severing" or "severance" does not include any separation process of natural gas that is commonly employed to obtain marketable natural resource products. The Tax Commissioner approved the adjustment for the application of actual transportation expenses for natural gas and coalbed methane, however, it disallowed the portion of the refund resulting from CNX's removal of gross value resulting from the sale of processed NGLs. Instead, the Tax Commissioner adjusted CNX's gross proceeds for processed NGLs by subtracting transportation, transmission, and processing expenses.

CNX appealed the refund reductions to OTA and argued that it is excused from paying severance tax on NGLs that it chose not to sell at the wellhead. OTA disagreed and affirmed the denial of CNX's refund claim. OTA noted that the "practical result" of CNX's theory would be to entirely exempt processed NGLs from severance tax and it found no basis for this exemption. It found that CNX "clearly removes" NGLs "from the earth" in West Virginia and also "receives gross proceeds from the sale of its NGLs whether sold at the wellhead or sold after fractionation." It found that the deduction that the Tax Commissioner gave CNX for the amount it had to spend on fractionation "brings the gross proceeds amount back to the wellhead price." Given that, it held that CNX's NGLs, once severed, were subject to the severance tax. It is from that decision that CNX now appeals.

The West Virginia Administrative Procedures Act sets forth the standard of judicial review by this Court as follows:

> The court may affirm the order or decision of the agency or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decision, or order are:
> (1)    In violation of constitutional or statutory provisions;
> (2)    In excess of the statutory authority or jurisdiction of the agency;
> (3)    Made upon unlawful procedures;
> (4)    Affected by other error of law;
> (5)    Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6)    Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

W. Va. Code § 29A-5-4(g); *Statoil USA Onshore Properties, Inc. v. Irby*, 249 W. Va. 424, ___, 895 S.E.2d 827, 831 (Ct. App. 2023).

Further, regarding the review of OTA decisions, our Supreme Court has stated:

> In an administrative appeal from the decision of the West Virginia Office of Tax Appeals, this Court will review the final order of the circuit court pursuant to the standards of review in the State Administrative Procedures Act . . . . Findings of fact of the administrative law judge will not be set aside or vacated unless clearly wrong, and, although administrative interpretation of State tax provisions will be afforded sound consideration, this Court will review questions of law *de novo*. Syllabus Point 1, *Griffith v. ConAgra Brands, Inc.*, 229 W. Va. 190, 728 S.E.2d 74 (2012).

Syl. Pt. 1, *Antero Res. Corp. v. Steager*, 244 W. Va. 81, 851 S.E.2d 527 (2020).

On appeal, CNX raises three assignments of error: (1) that OTA erroneously determined that the Tax Commissioner may impose severance tax on the gross value of processed NGLs; (2) that the Tax Commissioner is violating the equal protection clause of the West Virginia and United States Constitutions by not uniformly applying the severance tax on natural gas producers; and (3) that the Tax Commissioner is violating the due process and commerce clauses of the United States Constitution by subjecting the gross value of processed NGLs to severance tax.

In its first assignment of error, CNX points to the statutory definition of "severing" or "severed" applicable to oil and natural gas, which is defined as "the physical removal of the natural resources from the earth or waters of this state by any means . . ." and which also excludes "any separation process of oil or natural gas commonly employed to obtain marketable natural resource products." W. Va. Code § 11-13A-2(c)(11) (2021). CNX posits that the Legislature chose this exclusion because the revenue-generating activity for processed NGLs is the processing activity undertaken to produce those commodities, not the severance of the impure hydrocarbon mixture from the earth or waters of West Virginia. CNX submits that the processed NGLs that are separated from natural gas at processing facilities are not marketable natural resource products until they are separated from the methane via the cryogenic expansion process and then fractionated into their base components and that these activities are manufacturing processes rather than severance activities, for the purposes of the severance tax. Accordingly, CNX suggests that the Tax Commissioner should not impose severance taxes on the products of this "processing" activity and that only NGLs sold at the wellhead should be subject to severance tax. We disagree with this analysis.

West Virginia imposes a tax upon natural gas producers for the privilege of severing natural resources within the state. W. Va. Code § 11-13A-3a(a) (2020). Severance tax on the production of oil and gas is "five percent of the gross value of the natural gas or oil produced by the producer as shown by the gross proceeds derived from the sale thereof by the producer. . . ." W. Va. Code § 11-13A-3a(b). Gross value is further defined as "the market value of the natural resource product, in the immediate vicinity where severed, determined after application of post-production processing generally applied by the industry to obtain commercially marketable or usable natural resource products." W. Va. Code § 11-13A-2(c)(6).

NGLs are present in the natural gas stream at the time it is severed from the earth and so they are subject to the tax on their value at the well. That value does not include the results of the post-production processing like the separation and fractionation that CNX or other parties perform to get the NGLs into a separately marketable state, but that does not mean NGLs are not subject to severance tax. W. Va. Code § 11-13A-2(c)(11); *Statoil USA*, 249 W. Va. at ___, 895 S.E.2d at 832. Rather, those processing activities are addressed through a cost deduction for transportation, pipeline transmission, and processing costs. Indeed, the corresponding legislative rule expressly provides for the deduction of

5

transportation and transmission costs from the gross proceeds derived when the sale of natural gas is not at the wellhead. W. Va. Code St. R. § 110-13A-4.8. This further supports the requirement of using the wellhead value of NGLs to calculate severance tax. On occasion, natural gas producers, including CNX, sell the impure mixture of NGLs at the wellhead, even if typically for a lower price than post-production NGLs might be sold. NGLs are priced differently at different selling points based, in part, on which party will bear the expense of processing and the risk of uncertainty in determining the ratio of methane, ethane, butane, and propane present in any unprocessed mixture. Regardless of where the NGLs are in that process, they are taxed on the value at the point of severance.

Neither party argues that the statutory language is ambiguous. A statute that is "clear and unambiguous" will be "applied and not construed." Syl. Pt. 1, in part, *State v. Elder*, 152 W. Va. 571, 165 S.E.2d 108 (1968). "Where the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation." Syl. Pt. 2, *Crockett v. Andrews*, 153 W. Va. 714, 172 S.E.2d 384 (1970). "If the text [of a statute], given its plain meaning, answers the interpretive question, the language must prevail and further inquiry is foreclosed." *Appalachian Power Co. v. State Tax Dep't of W. Va.*, 195 W. Va. 573, 587, 466 S.E.2d 424, 438 (1995). Accordingly, on that basis, we find no error in OTA's decision to affirm the refund decrease and denial letters at issue.

Turning briefly to CNX's constitutional arguments, we are not persuaded that the Tax Commissioner violated the equal protection clause of the West Virginia and United States Constitutions or the due process clause and commerce clause of the United States Constitution. CNX argues that the Tax Commissioner's interpretation and application of the Severance Tax Act violates equal protection by unequally taxing natural gas production competitors who produce the same product depending on where they sell the product. However, this argument is unavailing. Severance tax applies to those parties who sever natural resources, and the tax is imposed on the value of the resource at the point of severance. If the severing party incurs costs bringing the natural resource to market, that party may deduct the transportation, transmission, and processing costs. This formula applies to all parties who sever the resource. The tax does not apply to later purchasers of the resource since those purchasers do not sever the resource. Accordingly, OTA's final decision does not offend equal protection under either the West Virginia or United States Constitutions.

Similarly, CNX complains that this application of the Severance Tax Act violates the due process and commerce clauses because it taxes the processing activity that NGLs may undergo outside the boundaries of West Virginia and without a minimum connection between West Virginia and such out-of-state processing. However, this misconstrues the privilege which is subject to the tax. It is the act of severing that is subject to the severance tax, and it is axiomatic that this conduct must be performed in the State of West Virginia. The subsequent processing of the NGLs, wherever it may take place, is not subject to

taxation under the Severance Tax Act. Therefore, we find no violation of the due process or commerce clauses in OTA's final decision.

Finding no error of law, constitutional violation, or abuse of discretion, we find no basis to disturb the January 5, 2023, final decision of OTA. Accordingly, we affirm.

Affirmed.

**ISSUED:** March 25, 2024

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen
Judge Daniel W. Greear